# FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Grand Jury B386-01

U.S. DISTRICT COURT
BRIDGEPORT CT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 3:16CR 198 (AWT |
| | : | |
| v. | : | VIOLATIONS: |
| | : | |
| JARED DYLAN SPARKS and | : | 18 U.S.C. § 1832(a)(1) |
| JAY WILLIAMS | : | (Theft of Trade Secrets) |
| | : | |
| | : | 18 U.S.C. § 1832(a)(2) |
| | : | (Upload and Transmission of Trade Secrets) |
| | : | |
| | : | 18 U.S.C. § 1832(a)(3) |
| | : | (Possession of Stolen Trade Secrets) |
| | : | |
| | : | 18 U.S.C. § 1832(a)(5) |
| | : | (Conspiracy to Steal, Upload, Transmit and |
| | : | Possess Stolen Trade Secrets) |

## INDICTMENT

The Grand Jury Charges:

### Relevant Persons and Entities

At all times relevant to this Indictment:

1.      LBI, Inc. ("LBI") was a company headquartered in Groton, Connecticut that specialized in the design, manufacture and testing of marine vehicles, including, as detailed below, unmanned underwater vehicles.

2.      Charles River Analytics ("CRA") was a company headquartered in Cambridge, Massachusetts that specialized in software development, including artificial intelligence software. CRA collaborated with LBI from in or about 2009 until in or about 2011 in the

integration of their proprietary software into LBI's unmanned vehicles to operate navigation, sensory, image processing, and other analytic functionality.

3.      Company A was a company that specialized in the development and application of advanced mathematical solutions in computer software. Company A collaborated with LBI and CRA from in or about 2009 until in or about 2011 in facilitating the integration of CRA's software into LBI's unmanned vehicles.

4.      The Office of Naval Research ("ONR") is an organization within the United States Department of Navy that coordinates, executes and promotes the science and technology programs of the U.S. Navy and Marine Corps. ONR carries out its mission statement by contracting with, among others, private individuals and companies to research and develop new technologies for military applications.

5.      The Space and Naval Warfare Systems Command ("SPAWAR") is a United States Naval Command tasked with developing, delivering and sustaining communications and information capabilities for all branches of the United States Military.

6.      The National Oceanic and Atmospheric Administration ("NOAA") is a scientific agency with the U.S. Department of Commerce dedicated to understanding and predicting changes in climate, weather, oceans and coasts. NOAA contracts with private individuals and companies in order to fulfill its mission of conducting research to better understand the climate and oceans.

7.      Dropbox, Inc. ("Dropbox") is a company that offers a cloud-based service for backing up data and sharing data among parties. A file uploaded to a Dropbox account can be accessed by the user from any electronic device that has the Dropbox application, or from any electronic device with access to Dropbox's web interface at dropbox.com. Dropbox is

2

headquartered in San Francisco, California, with computer servers hosting the stored data located outside the State of Connecticut.

8.     JARED DYLAN SPARKS ("SPARKS"), the defendant herein, was an electrical engineer who resided in Connecticut. SPARKS was employed by LBI from on or about January 4, 2010, until on or about December 2, 2011, as the Lead Electrical Engineer for design, prototyping and testing for prototypes of unmanned vehicles. SPARKS signed a Non-Disclosure Agreement on or about December 9, 2009, prior to beginning his employment with LBI. SPARKS also signed an Employee Non-Compete Agreement and an Employee Rules & Policies Statement on or about January 4, 2010. On or about December 2, 2011, SPARKS resigned from his employment at LBI. On or about January 3, 2012, SPARKS began working for CRA.

9.     JAY WILLIAMS ("WILLIAMS"), the defendant herein, was an Electro-Mechanical Technician who resided in Connecticut. WILLIAMS was employed by LBI from on or about May 10, 2010, until on or about November 23, 2011, as an Electro-Mechanical Technician tasked with the fabrication, installation, testing and operation of various prototypes of unmanned vehicles. WILLIAMS signed an Employee Non-Compete Agreement, a Non-Disclosure Agreement and an Employee Rules & Policies Statement on or about May 10, 2010. On or about November 23, 2011, WILLIAMS resigned from LBI. On or about January 3, 2012, WILLIAMS began working for CRA.

The Technologies

A.     LBI's Large Displacement Unmanned Underwater Vehicle ("LDUUV")

10.     LBI had at least three contracts with ONR to develop two versions of a vehicle identified as the Large Displacement Unmanned Underwater Vehicle ("LDUUV"). The LDUUV was intended to be a fully unmanned seagoing vehicle that could operate underwater.

3

In part due to its intended ability to conduct risky, long-range, long-duration missions without any risk to human life, the project was designated a top program by the U.S. Navy. The development of versions one and two of the LDUUV were managed under ONR contract numbers N00014-10-C-0155 ("0155"), N00014-10-C-0397 ("0397") and 00014-09-C-0429 ("0429"), among others.

11.     CRA had at least one contract with ONR to develop software that would be integrated into the LDUUV. The development of the software by CRA that would support the LDUUV was primarily managed under ONR contract number N00014-10-C0405 ("0405").

12.     In connection with contract numbers 0155 and 0397, LBI developed a number of proprietary systems in connection to the LDUUV including the following:

   a. A Variable Buoyancy System consisting of a mechanism responsible for the vehicle's depth adjustment;

   b. A Pressure Compensation System referred to as the Aluminum "1000-Meter Pressure Vessel" designed to protect the various vital components from water damage in case the housing to the components was breached;

   c. A Fuel Cell Buoy to generate power for the LDUUV and send or receive data while the LDUUV was submerged;

   d. A Submersible Tether Winch, which was designed to attach the Fuel Cell Buoy to the LDUUV. After completion of the data transmission, or the recharging of the LDUUV, the winch could be retracted and the Fuel Cell Buoy returned to the LDUUV;

   e. A Zero Vibration Isolator designed to reduce the noise caused by vibrations on the primary propulsion system of the LDUUV while deployed thereby reducing the risk of detection;

   f. A propulsion system that included a three-fin actuator steering mechanism, which allowed the LDUUV to move upward, downward, left and right;

   g. A battery charging system used to charge the battery system of the LDUUV.

4

B. LBI's Airborne Expendable Ice Buoy ("AXIB Buoy")

13.    LBI developed an Airborne Expendable Ice Buoy ("AXIB Buoy") pursuant to two different contracts with NOAA.  The AXIB Buoy was designed to gather oceanographic data and transmit it using a satellite network referred to as the Argos satellite network.

14.    In connection with the NOAA contracts, LBI developed a number of proprietary systems related to the AXIB Buoy, including the following:

> a.  An electronic component configuration to support satellite communications; and
>
> b.  A detailed engineering design to build the AXIB Buoy.

C. LBI's Low Visibility Craft ("LVC")

15.    LBI also developed the Low Visibility Craft ("LVC") for ONR and SPAWAR under one or more contracts, including contract number "0429."  The LVC was designed to conduct autonomous missions, including the launch and recovery of smaller ranged vehicles. The LVC was equipped with a customized docking system that was designed to facilitate the launch and recovery of different types of autonomous vehicles.

16.    CRA had at least one contract with ONR to develop software that would be integrated into the LVC.  The development of the software by CRA that would support the LVC was managed under ONR contract number 0405.

17.    In connection with contract number 0429, LBI developed a number of proprietary systems in connection to the LVC, including the following:

> a.  A proprietary propulsion system;
>
> b.  A launch and recovery system, including a motor controller that controls the motor for the launch and recovery components of the LVC.

## LBI's Security Protections

18.     LBI undertook reasonable measures to protect and keep secret its proprietary information as well as to protect the integrity of its physical equipment and electronic files, including the following, among others:

### Employee Controls

a.      requiring all employees to provide individualized usernames and passcodes prior to gaining access to the company computer network;

b.      limiting employee access to the company computer network to employees who had a need for access;

c.      requiring that all employees undergo an exit briefing;

### Electronic Controls

d.      requiring all security updates to be affirmatively approved prior to installation in order to limit the possibility of unauthorized intruders;

e.      utilizing Kaspersky Security Software to protect its network from both external and internal intrusions;

f.      limiting employee unauthorized use of external memory devices, including flash-drives;

### Physical Controls

g.      installing and maintaining a centrally monitored alarm system;

h.      prohibiting foreign nationals from accessing LBI facilities;

i.      requiring all visitors to sign in before entering the premises and to be escorted while on the premises;

j.      requiring that all restricted doors remain locked during work hours;

k.      requiring all employees not to discard sensitive trash and to utilize the shredder on site;

Document Controls

l.      requiring all employees to agree, prior to commencing employment, to sign a Non-Disclosure Agreement that provided, among other things, that "[t]he Disclosing Party's [that is LBI's] Confidential Information will be accepted and received by the individual as necessary.  Confidential Information that is disclosed to the Receiving Party [that is the employee] is either owned by the Disclosing Party or the Disclosing Party has the rights to disclose Confidential Information to the Receiving Party. All information disclosed to the Receiving Party will be considered confidential to the Receiving Party unless otherwise stated by the Disclosing Party."

m.      requiring all employees to agree prior to commencing employment to sign a Non-Compete Agreement that provided, among other things, that "the undersigned employee hereby agrees not to directly or indirectly compete with the business of LBI Inc. ... during the period of employment and for a period of 1 year following termination of employment and notwithstanding the cause or reason for termination;"

n.      requiring all employees to agree, prior to commencing employment, to sign an Employment Rules and Policies Form acknowledging, among others, that "[a]ny patents, designs, devices or chemical formulations developed while in the employ of LBI Inc., are the property of LBI Inc."

o.      requiring that all proprietary information, including electronic communications and draft documents be marked as such;

p.      requiring all employees to agree prior to commencing employment to sign a Confidentiality Policy that "provided, among other things, that "any technical information regarding and techniques, including the formulation of mixtures and compounds as well as technical information belonging to LBI, Inc. and our customers and clients is proprietary information and thus confidential and is not to be divulged to anyone outside of LBI, Inc."; and

q.      signing Joint Non-Disclosure Agreements with companies with which LBI collaborated on joint projects.

LBI's Electronic File Storage System

19.      LBI maintained a database containing files for each part, system and vehicle created by LBI employees.  These files were accessed with a computer-aided design platform called SolidWorks, which allowed users to interact with a visual rendering of a specific part or

7

system and make changes to the specifications, materials or design. There were at least two file

type extensions for files that were compatible with SolidWorks, including the following:

      a.      Files with the extension ".sldprt" contained all information for an individual component or part; and

      b.      Files with the extension ".sldasm" contained all information for an assembly, or in other words, a series of parts. These files contained all of the information needed to reproduce and manufacture the respective component or assembly to exact specifications.

      20.      AutoCAD is a computer-aided design platform that allowed users to interact with

a visual rendering of a specific part or system and make changes to the specifications, materials

or design. There was at least one file type extension for files that were compatible with

AutoCAD, including the following:

      a.      Files with the extension ".dwg" contained all of the information needed to reproduce and manufacture the respective component or assembly to exact specifications.

### SPARKS's and WILLIAMS's Involvement with LBI's LDUUV and LVC

      21.      From on or about January 4, 2010, up to and including on or about December 2,

2011, SPARKS was responsible for designing electrical systems, overseeing construction and

installation of the buoyancy system, and supervising the wiring and controlling of the buoyancy

system for both the LVC and LDUUV. SPARKS also helped create the propulsion and signaling

aspects for both vehicles. In addition, SPARKS was generally involved with reviewing

drawings, drafting specifications and conducting testing for both the LVC and LDUUV. During

the course of his employment with LBI, SPARKS interacted with CRA and Company A

personnel in connection with integrating LBI's hardware and electronics with software created

by both CRA and Company A.

      22.      From on or about May 10, 2010, up to and including on or about November 23,

2011, WILLIAMS was responsible for the fabrication, installation, testing and operation of prototype sea vehicle systems, including the LVC and LDUUV.  These duties specifically entailed physical construction of the vehicles, wiring of electronic systems, populating the pressure cylinder housings with electronic components, and general maintenance.  WILLIAMS also conducted testing in connection with the LVC, the first version of the LDUUV and the first part of testing for the second version of the LDUUV.  During the course of his employment with LBI, SPARKS interacted with CRA and Company A personnel in connection with testing the integration of LBI's hardware and electronics with software created by both CRA and Company A.

23.     Beginning in or about the fall of 2010, or early winter 2011, CRA engaged in negotiations with ONR to expand its work under contract 0405 regarding the LDUUV to include, not only the development of software, but also the testing of the integration of the software with the LBI-developed prototypes.  CRA had not done this type of work before, that is, house and maintain the vehicles being tested throughout the integration period.  Therefore, in addition to establishing and supplying an appropriate physical facility, CRA also needed to hire personnel to assist in the new venture.

24.     Pursuant to those negotiations, CRA explored various physical facilities that could house the LBI-developed prototypes for testing.

25.     On or about August 19, 2011, CRA, through its vice-president, requested a quote from a third-party company for the purchase of the SolidWorks software.

26.     On or about October 11, 2011, CRA provided ONR with an "Intent for Use" of

a Marina Facility in Rhode Island," which stated, in part, "We intend to store, maintain and operate a collection of small vessels, including two (2) diesel powered 11-m Rigid Hull Inflatable Boats and a suite of developing unmanned vehicles . . . ."

27.     On October 16, 2011, CRA sent ONR a proposed draft of the Statement of Work for the proposed expansion of contract 0405, which included the testing of the LBI-developed prototypes.

28.     In or about November 2011, CRA signed a lease to house the LBI-developed equipment at the Point View Marina in Rhode Island.

29.     On a date unknown, but not later than on or about November 1, 2011, SPARKS accepted an employment offer with CRA as an Electrical Engineer.  In this position, SPARKS would be responsible for leading the design, development, and integration of mechanical and electrical components and subsystems for unmanned underwater vehicles, including the LDUUV developed by LBI.

30.     Effective on or about December 2, 2011, SPARKS resigned his position with LBI.  At the time SPARKS resigned from LBI his total annual compensation was approximately $85,000 plus a $5,000 bonus.  CRA offered SPARKS compensation of approximately $90,000 plus the benefits of a corporate profit-sharing plan.

31.     On a date unknown, but not later than on or about November 1, 2011, WILLIAMS, accepted an employment offer with CRA as Marine Service/Safety Manger.  In this position, WILLIAMS would be responsible for operating a Rigid Hull Inflatable Boat in support of oceanographic research as well as the fabrication and assembly and wiring of components for marine vehicles, including the LDUUV developed by LBI.

32.     On or about November 23, 2011, WILLIAMS resigned his position with LBI.  At

10

the time WILLIAMS resigned from LBI, he was compensated at a rate of approximately $27 per hour. CRA offered WILLIAMS compensation at the rate of $27 per hour plus the benefit of a corporate profit-sharing plan in an amount up to 15% of his annual salary. WILLIAMS was also given a signing bonus of approximately $7,000.

33.     On or about December 19, 2011, LBI-developed prototypes, including two LDUUVs, the LVC, and two Rigid Hull Inflatable Boats that had been modified by LBI, among other vehicles, were transferred to the facility leased by CRA at the Point View Marina in South Kingstown, Rhode Island.

34.     SPARKS and WILLIAMS began to work for CRA on January 3, 2012.

35.     In or about February of 2012, ONR and CRA signed the expansion to contract 0405 to include the integration and testing of the LDUUV. CRA continued collaborating with Company A under contract 0405.

## COUNT ONE
### (Conspiracy to Steal, Upload, Transmit and Possess Stolen Trade Secrets)

36.     The allegations in paragraphs 1 through 35 of this Indictment are repeated and re-alleged as though fully set forth herein.

37.     From a date unknown, but not later than in or about April 2011 to in or about June 2012, in the District of Connecticut and elsewhere, JARED DYLAN SPARKS and JAY WILLIAMS, the defendants herein, did, knowingly and intentionally, conspire, combine, confederate, and agree with each other and with others known and unknown to the grand jury, to commit an offense against the United States, namely:

          a.  to knowingly steal, and without authorization appropriate and take LBI's trade secrets, to wit, electronic files, photographs, drawings and diagrams of components associated with the LDUUV, LVC and AXIB Buoy;

11

    b.  to knowingly upload, download, transmit, send and communicate LBI's trade secrets without authorization; and

    c.  to knowingly possess LBI's trade secrets, knowing the same to have been stolen and appropriated, obtained and converted without authorization,

with the intent to convert such trade secrets that are related to and included in a product that is produced for and placed in interstate and foreign commerce, to the economic benefit of someone other than the trade secrets owner, that is, LBI, and knowing and intending that the offense will injure the owner of those trade secrets, that is, LBI, as prohibited by 18 U.S.C. § 1832(a)(1), (2) and (3).

OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy and to effect its objects, the defendants committed the following overt acts, among others, in the District of Connecticut and elsewhere:

38.    On or about April 18, 2011, WILLIAMS established an account with Dropbox. The files uploaded to Dropbox were accessible to WILLIAMS on any computer that he controlled and that had an Internet connection.

39.    On or about May 8, 2011, at approximately 3:46 p.m. EDT, WILLIAMS uploaded to Dropbox confidential and proprietary information belonging to LBI, to wit, a photograph of the Zero-Vibration Isolator for the LDUUV.

40.    On or about May 8, 2011, at approximately 7:28 p.m. EDT, WILLIAMS uploaded to Dropbox confidential and proprietary information belonging to LBI, to wit, a photograph of the Variable Buoyancy System of the LDUUV.

41.    On or about May 8, 2011, at approximately 9:29 p.m. EDT, WILLIAMS

uploaded to Dropbox confidential and proprietary information belonging to LBI, to wit, a photograph of the electronic schematics of the motor controller for the Launch and Recovery System of the LVC.

     42.     On or about May 8, 2011, at approximately 9:35 p.m. EDT, WILLIAMS uploaded to Dropbox confidential and proprietary information belonging to LBI, to wit, a photograph of the electronic schematics of the Launch and Recovery System of the LVC.

     43.     On or about May 8, 2011, at approximately 10:25 p.m. EDT, WILLIAMS uploaded to Dropbox confidential and proprietary information belonging to LBI, to wit, a photograph of the electronics of the Argos satellite telemetry system.

     44.     On or about June 9, 2011, at approximately 4:12 p.m. EDT, WILLIAMS uploaded to Dropbox confidential and proprietary information belonging to LBI, to wit, two photographs of the internal components to the Aluminum-1000 Meter Pressure Vessel, among other files.

     45.     On or about August 26, 2011, at approximately 11:02 a.m. EDT, SPARKS sent WILLIAMS confidential and proprietary information belonging to LBI, to wit, a drawing of the weight and balance schematic for the LDUUV via e-mail.

     46.     On or about August 26, 2011, at approximately 3:03 p.m. EDT, WILLIAMS uploaded to his Dropbox account confidential and proprietary information belonging to LBI, to wit, the drawing of the weight and balance schematic for the LDUUV.

     47.     On or about October 13, 2011, at approximately 2:30 p.m. EDT, SPARKS uploaded to his Dropbox account confidential and proprietary information belonging to LBI, to wit, historical job costing information regarding LBI's previous ship-building projects.

     48.     On or about October 17, 2011, WILLIAMS emailed five photographs containing

images of the fuel manifold of an 11-meter rigid hull inflatable boat from one of his personal email accounts to another one of his personal email accounts.

49.     On or about November 7, 2011, at approximately 8:00 a.m. EST, SPARKS upgraded his existing Dropbox account storage capacity to increase his storage space.

50.     On or about November 7, 2011, approximately between 8:07 a.m. and 3:41 p.m. EST, SPARKS uploaded to his Dropbox account numerous computer files containing confidential and proprietary information belonging to LBI, stored on his LBI assigned desktop computer, including, but not limited to, the following files:

      a.  SUBMERSIBLE_WINCH_DRAWING_PKG_08_22-11.ps;

      b.  Backup (1) of Mini-AXIB Assembly.SLDASM, and associated files;

      c.  Backup (1) of Spherical PV Assembly 05292009.SLDASM, and associated files;

      d.  Backup (3) of LVC Motor Assembly.SLDASM, and associated files;

      e.  LDUUV-Interim Propulsion - Tail Section.SLDASM, and associated files;

      f.  Backup (2) of Cylindrical Pressure Vessel End Cap, 12.75 dia.sldprt;

      g.  2011-08-29 LD Relay Diagram.v3.pdf.

51.     On or about November 7, 2011, at approximately 5:33 p.m. EST, SPARKS uninstalled the Dropbox application from his LBI-assigned desktop computer.

52.     On or about November 8, 2011, SPARKS uploaded to his Dropbox account a file containing confidential and proprietary information belonging to LBI regarding the methodology used to test and build the battery box for the LDUUV and its content.

53.     On or about November 15, 2011, SPARKS deleted approximately 5,000 files from his Dropbox account.

54.     On or about November 28, 2011, at approximately 12:15 p.m. EST,

Sparks sent himself an email with a subject "PIC Folder," from his LBI email account to his personal Gmail account. The email contained LBI confidential and proprietary information, that is, a schematic of the pic controller configuration for the battery system of the LDUUV.

55.     On or about December 7, 2011, SPARKS sent a file containing the LBI proprietary design of the electronic schematic for the battery charger of the LDUUV via email to an employee of Company A.

56.     On or about April 1, 2012, SPARKS deleted job costing information regarding LBI's LDUUV project from his Dropbox account.

57.     In or about June 2012, Sparks possessed several files that contained LBI proprietary information, including the following files:

   a.   L.B.I., Inc. (Backup Oct 28,2010  07 42 AM).qbb;
   b.   LVC Schematics.OUTDATED.0429contract.pdf;
   c.   LDUUV Lead Acid Battery Pack v2.pdf;
   d.   hoursanddollars.xls; and
   e.   TBM Presentation 051509.pdf

All in violation of Title 18, United States Code, § 1832(a)(5).

## COUNTS TWO to EIGHT
(Theft of Trade Secrets)

58.     The allegations in paragraphs 1 through 57 of this Indictment are repeated and re-alleged as though fully set forth herein.

59.     On or about November 7, 2011, in the District of Connecticut and elsewhere, JARED DYLAN SPARKS, the defendant herein, with the intent to convert trade secrets that are related to and included in products that are produced for and placed in interstate and foreign commerce, to the economic benefit of someone other than the trade secrets' owner, that is, LBI, and knowing and intending that the offense will injure the owner of those trade secrets, that is,

LBI, did knowingly steal, and without authorization appropriate and take LBI's trade secrets

listed below, to wit,

| COUNT TWO | SUBMERSIBLE_WINCH_DRAWING_PKG_08_22-11.ps; 21624434 bytes in size |
| COUNT THREE | Backup (1) of Mini-AXIB Assembly.SLDASM; 598016 bytes in size; and associated files |
| COUNT FOUR | Backup (1) of Spherical PV Assembly 05292009.SLDASM; 298496 bytes in size; and associated files |
| COUNT FIVE | Backup (3) of LVC Motor Assembly.SLDASM; 986624 bytes in size; and associated files |
| COUNT SIX | LDUUV-Interim Propulsion - Tail Section.SLDASM; . 3291648 bytes in size; and associated files |
| COUNT SEVEN | Backup (2) of Cylindrical Pressure Vessel End Cap, 12.75 dia.sldprt; 385536 bytes in size |
| COUNT EIGHT | 2011-08-29 LD Relay Diagram.v3.pdf; 221069 bytes in size |

All in violation of Title 18, United States Code, Section 1832(a)(1).

## COUNTS NINE to FIFTEEN
### (Upload of Trade Secrets)

60.     The allegations in paragraphs 1 through 57 of this Indictment are repeated and

re-alleged as though fully set forth herein.

61.     On or about November 7, 2011, in the District of Connecticut and elsewhere,

JARED DYLAN SPARKS, the defendant herein, with the intent to convert trade secrets that are

related to and included in products that are produced for and placed in interstate and foreign

commerce, to the economic benefit of someone other than the trade secrets' owner, that is, LBI,

and knowing and intending that the offense will injure the owner of those trade secrets, that is,

LBI, did, knowingly and without authorization, upload LBI's trade secrets listed below, to wit,

| COUNT NINE | SUBMERSIBLE_WINCH_DRAWING_PKG_08_22-11.ps; 21624434 bytes in size |
| COUNT TEN | Backup (1) of Mini-AXIB Assembly.SLDASM, 598016 bytes in size; and associated files |

| COUNT ELEVEN | Backup (1) of Spherical PV Assembly 05292009.SLDASM, 298496 bytes in size; and associated files |
| COUNT TWELVE | Backup (3) of LVC Motor Assembly.SLDASM, 986624 bytes in size; and associated files |
| COUNT THIRTEEN | LDUUV-Interim Propulsion - Tail Section.SLDASM, 3291648 bytes in size; and associated files |
| COUNT FOURTEEN | Backup (2) of Cylindrical Pressure Vessel End Cap, 12.75 dia.sldprt; 385536 bytes in size |
| COUNT FIFTEEN | 2011-08-29 LD Relay Diagram.v3.pdf; 221069 bytes in size |

All in violation of Title 18, United States Code, Section 1832(a)(2).

## COUNTS SIXTEEN to SEVENTEEN
### (Transmission of Trade Secrets)

62.     The allegations in paragraphs 1 through 57 of this Indictment are repeated and re-alleged as though fully set forth herein.

63.     On the dates specified below, in the District of Connecticut and elsewhere, JARED DYLAN SPARKS, the defendant herein, with the intent to convert trade secrets that are related to and included in a product that is produced for and placed in interstate and foreign commerce, to the economic benefit of someone other than the trade secrets' owner, that is, LBI, and knowing and intending that the offense will injure the owner of those trade secrets, that is, LBI, did, knowingly and without authorization, transmit, deliver, send, communicate and convey such information, to wit,

| COUNT SIXTEEN | November 28, 2011 | Computer programming code and schematics for the battery charging system for the LDUUV |
| COUNT SEVENTEEN | December 7, 2011 | A copy of the design of the electronic schematic for the battery charger of the LDUUV |

All in violation of Title 18, United States Code, Section 1832(a)(2).

17

## COUNTS EIGHTEEN to TWENTY-TWO
(Possession of Stolen Trade Secrets)

64.　　The allegations in paragraphs 1 through 57 of this Indictment are repeated and re-alleged as though fully set forth herein.

65.　　From a date unknown, but not later than October 13, 2011, up to and including on or about June 27, 2012, in the District of Connecticut and elsewhere, JARED DYLAN SPARKS, the defendant herein, with the intent to convert trade secrets that are related to and included in products that are produced for and placed in interstate and foreign commerce, to the economic benefit of someone other than the trade secrets' owner, to wit, LBI, and knowing and intending that the offense will injure the owner of those trade secrets, that is, LBI, did knowingly possess LBI's trade secrets listed below, to wit,

| COUNT EIGHTEEN | L.B.I., Inc. (Backup Oct 28,2010  07 42 AM).qbb |
| COUNT NINETEEN | LVC Schematics.OUTDATED.0429contract.pdf |
| COUNT TWENTY | LDUUV Lead Acid Battery Pack v2.pdf |
| COUNT TWENTY-ONE | hoursanddollars.xls. |
| COUNT TWENTY-TWO | TBM Presentation 051509.pdf |

knowing the same to have been stolen, appropriated, obtained and converted without authorization,

　　　　All in violation of Title 18, United States Code, Section 1832(a)(3).

## COUNTS TWENTY-THREE to TWENTY-NINE
(Possession of Stolen Trade Secrets)

66.　　The allegations in paragraphs 1 through 57 of this Indictment are repeated and re-alleged as though fully set forth herein.

67.    From in or about May 2011 up to and including in or about June 2012, in the District of Connecticut and elsewhere, JAY WILLIAMS, the defendant herein, with the intent to convert trade secrets that are related to and included in products that are produced for and placed in interstate and foreign commerce, to the economic benefit of someone other than the trade secrets' owner, to wit, LBI, and knowing and intending that the offense will injure the owner of those trade secrets, that is, LBI, did knowingly possess LBI's trade secrets listed below, to wit,

| COUNT TWENTY-THREE | a photograph of the Zero Vibration Isolation System of the LDUUV |
| COUNT TWENTY-FOUR | a photograph of the Variable Buoyancy System of the LDUUV |
| COUNT TWENTY-FIVE | a photograph of the electronics of the Argos satellite telemetry system related to the AXIB Buoy |
| COUNT TWENTY-SIX | a photograph of the electronic schematics of the motor controller for the Launch and Recovery System of the LVC |
| COUNT TWENTY-SEVEN | a photograph of the electronic schematics for the Launch and Recovery System of the LVC |
| COUNT TWENTY-EIGHT | a photograph of the internal components to the a Aluminum 1000-Meter Pressure Vessel |
| COUNT TWENTY-NINE | a vehicle dimensional drawing of weight and balances of the LD2 |

knowing the same to have been stolen, appropriated, obtained and converted without authorization,

All in violation of Title 18, United States Code, Section 1832(a)(3).


A TRUE BILL


_____
FOREPERSON


19

UNITED STATES OF AMERICA

DEIRDRE M. DALY
UNITED STATES ATTORNEY

JACABED RODRIGUEZ-COSS
ASSISTANT UNITED STATES ATTORNEY

BRIAN RESLER
TRIAL ATTORNEY